**Robert H. CRAWFORD,**
**Plaintiff-Appellant,**

v.

**Louise LOGAN, Defendant-Appellee.**

Supreme Court of Tennessee,
at Knoxville.

Sept. 6, 1983.

Robert Lawson, Chattanooga, for plaintiff-appellant.

Barbara Sims Arthur, Chattanooga, for defendant-appellee.

## OPINION

DROWOTA, Justice.

We granted Plaintiff's Rule 11 application because the issue raised on appeal has not been addressed by this Court. Suit was brought by an attorney against his former client to recover attorney fees for services rendered on the client's behalf in a divorce proceeding. The question of law presented is whether the violation by counsel of a disciplinary rule of this Court warrants the forfeiture of counsel's claim for a fee, if the violation prejudiced his client's divorce action?

Before deciding the legal issue, two factual issues must necessarily be addressed: (1) whether the attorney's failure to turn over a certain tape recording to his client, who had discharged him, or to her new counsel, constitutes a violation of Disciplinary Rule 2–110(A)(2), Rule 8 of the Supreme Court Rules, and (2) whether such action prejudiced his client?

The Defendant, Louise Logan, and her former husband, Jean Logan, were married October 2, 1944. Louise Logan was 16 years old and Jean Logan 20 years old at the time of their marriage. They were 50 and 54 years of age at the time of their divorce.

In March 1977, Louise Logan hired the Plaintiff, Robert Crawford, to represent her in divorce proceedings against Jean Logan. She paid an initial retainer of $500. If a reconciliation could be effected within a reasonable period of time, no additional fees were contemplated. There was no further agreement as to fees if the parties failed to reunite.

Mrs. Logan accused her husband of having improper relations with other women, and specifically asked Mr. Crawford to take the deposition of a young lady with whom she believed her husband had had a sexual involvement. Mr. Crawford employed a private investigator who interviewed the young lady and had the conversation taped. After the taping, Mr. Crawford talked to the young lady. He testified that the information obtained "would reflect favorably on Mrs. Logan's case, that having to do with an affair between [the young lady] and Mr. Logan during the marriage ... an affair with Mr. Logan that culminated with sexual conduct between the two." Mr. Crawford further testified that he felt this young lady was "most vital" to Mrs. Lo-

gan's case. He stated that "[s]he would come to court and give evidence against Mr. Logan of the adulterous conduct because we had that pinned down to the point she couldn't refuse it. . . . I would get exactly the information I needed from her of the adulterous conduct . . . in exchange for that, we would not openly damage her . . . [recent] marriage and child and family." While there is no proof that Mr. Crawford promised the witness that he would not make the tape available to anyone else, he did make arrangements for her to come to court with as little publicity as possible.

Mr. and Mrs. Logan failed to reconcile their differences and a trial date was set for May 1, 1978. Mr. Crawford stated that the adulterous conduct of Mr. Logan was "used to a great advantage" in achieving settlement results. In fact on the day of trial, negotiations resulted in an offer of settlement being made, whereby Mrs. Logan would receive approximately one-half of the one-million dollar marital estate as well as the divorce. Mr. Logan was to pay Mr. Crawford an attorney's fee of $10,000.

After the proposed settlement was made, most of the witnesses called on behalf of Mrs. Logan were released. Mrs. Logan, however, repudiated the settlement because she disagreed with the appraisal on the home and with the inclusion in the offer of "my own personal belongings that belonged to me . . . the Shuptrine prints . . . the diamond ring that Jean had given me and the Cadillac that Jean had given me." Mr. Crawford testified that the settlement that he had negotiated "was repudiated, and there was a great deal of bitterness on the part of Mrs. Logan. She repudiated the settlement agreement or did not want to follow it through to its conclusion. The reason she assigned—the essential reason that she assigned to it was that she wanted both homes; that is, she wanted the home on Estrellita Lane here in Chattanooga, and the condominium, which was in Florida . . . I told Mrs. Logan that I did not consider in my professional opinion that possible. . . . She insisted on having both homes, and therein lies the breakdown of the repudiation."

Early the next morning before the commencement of the trial, Mrs. Logan discharged Mr. Crawford as her attorney. After the discharge of Plaintiff all offers of settlement were withdrawn by Mr. Logan. Mrs. Logan then retained new counsel. Three weeks later, the case was heard and Mr. Logan was awarded the divorce, and Mrs. Logan received almost $200,000 less in the division of property than she had been offered in the settlement.

When Mr. Crawford brought this action for his fee, Mrs. Logan defended by trying to show that his representation had been inadequate and that he had breached his fiduciary duty to her, and as a result she should not be required to pay him anything further. She planned to show that Crawford had failed to take a deposition or statement from the young woman with whom her husband had had an affair. At trial, however, it was revealed to Mrs. Logan, for the first time, that Mr. Crawford's private investigator had tape recorded an interview with the young lady. The tape of her statement was not transcribed. Mr. Crawford stated that he did not tell Mrs. Logan that the tape existed. He also stated that "perhaps I didn't" tell her new attorney of the tape's existence. Mr. Crawford claimed that he kept knowledge of this tape from his client while he represented her to protect the young woman from problems with her husband and family and from the vindictiveness of Mrs. Logan. The young lady's name, however, was on a list of witnesses for the first trial, on May 1, 1978.

Mrs. Logan and her new attorney were aware of the young lady's identity and her relationship with Mr. Logan. However, her new counsel stated that by the time he was able to get in touch with her "she had been frightened and changed her story, exactly as Louise Logan had warned."

The Chancellor, in his findings from the bench, did not mention Mr. Crawford's failure to inform Mrs. Logan of the tape or his failure to deliver it to her upon his discharge. The Chancellor's findings deal solely with the fact that Mr. Crawford rep-

resented the Defendant and obtained a settlement, which settlement proved to be better than what she ultimately received at trial. He then determined that the fair value of Plaintiff's services to the Defendant was $10,000. As is often the case, when this cause was appealed to the Court of Appeals, Defendant's strategy, or emphasis, changed and the issue was no longer what is a fair and reasonable fee for services rendered, but the primary issue asserted was whether Plaintiff "is barred from any recovery." Counsel for Mrs. Logan cited Disciplinary Rule 2–110 to the Court of Appeals and that Court found that "Mr. Crawford's action, well intended as it may have been, is a violation of Disciplinary Rule 2–110 of Rule 8 of the Rules of the Supreme Court."

D.R. 2–110(A)(2) reads as follows:

(2) In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, *delivering to the client all papers and property to which the client is entitled,* and complying with applicable laws and rules. (Emphasis added.)

Also, under Ethical Considerations, EC 2–32 of Rule 8, a lawyer is admonished to protect the welfare of his client should the lawyer and the client reach a parting of ways. The lawyer is required to deliver to the client "all papers and property to which the client is entitled" and to co-operate with counsel subsequently employed by the client.

■ We must first determine whether the tape (or information of its existence) was a "paper or property" to which Mrs. Logan was entitled under DR 2–110. ABA Opinions 10333 and 10651, 1980 Supplement to the *Digest of Bar Associations Ethics Opinions,* indicate that it was. Opinion 10333 states that under DR 2–110(A)(2), "the conscientious lawyer should not withhold from the client any item that could reasonably be anticipated would be useful to the client." Opinion 10651 says that

investigative reports prepared at the attorney's directions in preparation of a matter are part of the attorney's file and, although specific cases may vary, on the whole such investigative reports should be turned over to a client on withdrawal. Additionally, the disciplinary rule itself offers a guideline in requiring that the lawyer must take "reasonable steps to avoid foreseeable prejudice to the rights of his client." This may require affirmative action after discharge. *See, e.g., Dayton Bar Association v. Weiner,* 40 Ohio St.2d 7, 317 N.E.2d 783, 786 (1974).

■ The Court of Appeals felt that by failing to deliver the tape to Mrs. Logan or her attorney, Crawford had deprived Mrs. Logan of "critical information obtained by him while representing her interests" and had violated DR 2–110(A)(2) which requires the delivery of "all papers and property to which the client is entitled" when a lawyer withdraws from employment. The court held:

This rule [DR 2–110] should apply with equal force when a lawyer is discharged by his client. As mentioned, a client has an absolute right to discharge his attorney at any time, and the attorney's conduct should not be affected by whether he is discharged or voluntarily withdraws. In either case the attorney should turn over to the client "all papers and property" to which the client is entitled, including the client's file and all other information generated in representing the client which was not conditioned upon non-disclosure to the client. Certainly, the attorney should be able to retain certain personal notes or letters that were in the client's file, but the burden should be on the attorney to show that a refusal to turn over this information does not prejudice the client's cause. The witness' taped interview in this case is included in the materials which should have been turned over to Mrs. Logan or her attorney.

■ We feel there is sufficient evidence in the record to determine the first factual issue, and we agree with the Court of Appeals that Plaintiff did in fact violate DR

2–110. However, as to the second factual issue, whether such violation was prejudicial to Plaintiff's client, Mrs. Logan, neither Plaintiff nor Defendant developed this issue in the trial court. Although we could perhaps conclude on this limited record, as the Court of Appeals did, that the "failure of Mrs. Logan to have the tape was prejudicial to her divorce action and the defense of the counter-action of her husband." We feel that where an issue is neither tried nor developed in the trial court and where the Chancellor has made no factual determination on that issue, that the better practice is to remand the cause to the court below pursuant to T.C.A. § 27–3–128, for further proceedings in order to allow that issue to be properly litigated and a factual determination made.

■ Who has the burden of proof on the question of whether the violation was prejudicial? In the divorce action, Mrs. Logan accused Mr. Logan of improper relations with other women. Mr. Logan denied the accusations which included certain improprieties with the young lady. The Court of Appeals "recognize[d] that it may well have been the witness would have changed her story in any event, and a court would decline to declare her a hostile witness to permit cross-examination, and the tape might not have come in as substantive evidence. However, resolution of these questions turns upon the conduct of the trial, and we are not disposed to find that the tape would have been of no benefit. As already stated, we think the rule should be that when a discharged attorney has failed to present to his client all the pertinent material in his file, the burden should rest with him to show that it was not prejudicial to the prosecution or defense of the client's case." We concur with and adopt the above rule.

We now turn to the crucial legal issue: Does the conduct of an attorney in violating a disciplinary rule, warrant a forfeiture of his fee, if the violation prejudiced his client?

■ As pointed out in the opinion of the Court of Appeals:

Under Tennessee law a client has a right to discharge his attorney with or without cause. *Chambliss, Bahner & Crawford v. Luther,* 531 S.W.2d 108 (Tenn.App.1975). In the former case the attorney is entitled to recover on the basis of *quantum meruit* or breach of contract, whichever is less. In the latter case the attorney can recover on the same basis, but is entitled to the greater of the two possible awards. *Adams v. Mellen,* 618 S.W.2d 485 (Tenn.App.1981).

In the case at bar, there being no contract between the parties, the Plaintiff, if he is to recover at all must do so on the basis of *quantum meruit.*

\*    \*    \*    \*    \*    \*

Although no Tennessee case has spoken directly on the subject, this Court in *Brownlow v. Payne,* 2 Tenn.App. 154 (1925), suggests that an attorney may be 'so negligent or ignorant, so unfaithful to the interest of his client . . . as to forfeit all rights under his contract.' We see no reason why this rule should not apply to an attorney's claim based on *quantum meruit.*

■ It should be remembered that, "[t]he relationship of attorney and client is an extremely delicate and fiduciary one, so far as the duty of the attorney toward the client is concerned. The attorney is an officer of the courts in which he is a practitioner, and courts jealously hold him to the utmost good faith in the discharge of his duty." *Cooper & Keys v. Bell,* 127 Tenn. 142, 150, 153 S.W. 844 (1912). Misconduct in violation of a statute or acts against public policy, or in breach of an attorney's fiduciary duty to his client, may support a complete forfeiture of fees. *Terry v. Bender,* 143 Cal.App.2d 198, 300 P.2d 119 (1956); *Rice v. Perl,* 320 N.W.2d 407 (Minn.1982); *Dailey v. Testone,* 72 Wash.2d 662, 435 P.2d 24 (1967); *Ross v. Scannell,* 97 Wash.2d 598, 647 P.2d 1004 (1982). This rule was recognized by the Tennessee Court of Appeals in *Coleman v. Moody,* 52 Tenn.App. 138, 372 S.W.2d 306, 313 (1963):

There is no question but that, generally, if an attorney is guilty of malfeasance

or breach of faith against his client during the purported performance of professional services, he will forfeit, and may not recover, compensation from his client for such pretended personal services.

In *Rice v. Perl, supra,* 320 N.W.2d at 411, this rule is considered absolute so that "when a breach of faith occurs, the attorney's right to compensation is gone" regardless of whether the client can prove actual injury or intentional fraud. Such a rule is based on the strong policy of insuring absolute fidelity to the client's interests.

At the same time, it has been said that it is contrary to the law to hold that any misconduct of an attorney, whether intentional or not, whether damaging to the client or not, automatically brings about forfeiture of his fees. *Frank v. Bloom,* 634 F.2d 1245, 1247, 1257 (10th Cir.1980). We feel this is the better view. Each case involving misconduct of an attorney and the forfeiture of his fee must be viewed in the light of the particular facts and circumstances of the case.

Having found that Plaintiff violated a disciplinary rule of this Court, this cause is remanded to the trial court for a determination of whether such action prejudiced his client. If no prejudice is found, the Chancellor's award of a $10,000 attorney's fee, which award was approved by the Court of Appeals, should be affirmed. If prejudice is found, then the Chancellor shall determine whether all or part of Plaintiff's fee shall be forfeited. The judgment of the Court of Appeals is accordingly affirmed in part, modified in part and remanded to the trial court for further proceedings. The costs of this appeal are taxed to Appellant.

FONES, C.J., and COOPER, BROCK and HARBISON, JJ., concur.