IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 13, 2003 Session

## GERALD W. MCCULLOUGH v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Bedford County**
**No. 9041     Charles Lee, Judge**

---

**No. M2002-01768-CCA-R9-CD - Filed August 4, 2003**

---

The Defendant, Gerald W. McCullough, was convicted of aggravated sexual battery. This Court affirmed the Defendant's conviction on direct appeal. See State v. Gerald W. McCullough, No. M1999-01525-CCA-R3-CD, 2000 WL 1246432, at *1 (Tenn. Crim. App., Nashville, Aug. 18, 2000). The Defendant was represented at trial by the Public Defender's Office. On direct appeal, the Defendant was represented by Nashville attorney John E. Herbison. After the Defendant's conviction was affirmed on direct appeal, the Defendant filed for post-conviction relief. In this effort, the Defendant was again represented by John E. Herbison. The trial court, on its own motion, conducted an evidentiary hearing with respect to the conflict of interest inherent in Mr. Herbison's representation of the Defendant on post-conviction following his representation of the Defendant on direct appeal. Following the hearing, the trial court ordered Mr. Herbison removed from his representation of the Defendant on post-conviction, and further ordered Mr. Herbison to return the entire retainer fee he had been paid in conjunction with the post-conviction proceeding. The trial court's ruling is now before this Court pursuant to an interlocutory appeal. See Tenn. R. App. P. 9. We affirm the trial court's order removing Mr. Herbison from further representation of the Defendant in this case. We remand the trial court's ruling regarding the refund of Mr. Herbison's fee for further proceedings.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed in Part;**
**Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

John E. Herbison, Nashville, Tennessee, for the appellant, Gerald W. McCullough.

Paul G. Summers, Attorney General and Reporter; Christine M. Lapps, Assistant Attorney General; Mike McCown, District Attorney General; and Michael Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A brief explanation of the unique procedural posture of this case will assist in analyzing the testimony adduced at the evidentiary hearing.

The Defendant was represented at his trial by assistant public defender Andrew Jackson Dearing, III. Prior to trial, Mr. Dearing filed a motion to suppress one or more statements the Defendant made incident to his arrest. Mr. Dearing was unsuccessful in his attempt to suppress these statements. The Defendant was subsequently convicted upon his jury trial of aggravated sexual battery. After the Defendant's jury trial, Mr. Dearing filed a motion for new trial. One of the grounds set forth in the motion was the trial court's denial of the motion to suppress. The motion for new trial was denied.

The Defendant filed a direct appeal, but was not represented by Mr. Dearing in this effort. Rather, through an arrangement with the Public Defender's Conference, the Public Defender's Office assigned the Defendant's appeal to Mr. John E. Herbison, a lawyer in private practice. Mr. Herbison raised two issues in the Defendant's direct appeal: "[w]hether admission of evidence of multiple instances of sexual contact where the indictment alleged only conduct occurring on one date certain constitute[d] plain and prejudicial error," and whether the Defendant's sentence was excessive. The trial court's ruling on the pre-trial suppression motion was not raised in the direct appeal.

The Defendant's direct appeal was unsuccessful. See State v. Gerald W. McCullough, No. M1999-01525-CCA-R3-CD, 2000 WL 1246432, at *1 (Tenn. Crim. App., Nashville, Aug. 18, 2000), perm. appeal denied (Tenn. 2001). Hence, the Defendant filed for post-conviction relief, alleging ineffective assistance of trial counsel. At the Defendant's request, the Defendant's parents hired Mr. Herbison to represent the Defendant in this effort. The trial judge determined that Mr. Herbison's representation of the Defendant on post-conviction created a conflict of interest because the Defendant would thereby be unable to claim ineffective assistance of counsel on his direct appeal. Accordingly, the trial court held an evidentiary hearing to determine whether the Defendant had effectively waived this conflict of interest.

Initially, we agree with the trial court that Mr. Herbison's representation of the Defendant on post-conviction after having represented him on direct appeal created an actual conflict of interest. Although petitioners for post-conviction relief are not constitutionally entitled to the effective assistance of counsel, they do have a statutory right to counsel. See Leslie v. State, 36 S.W.3d 34, 38 (Tenn. 2000); Tenn. Code Ann. § 40-30-207(b)(1). This Court has previously concluded that this statutory right includes the right to be represented by conflict-free counsel. See Kevin Burns v. State, No. W2000-02871-CCA-R9-PD, 2001 WL 912817, at *4 (Tenn. Crim. App., Jackson, Aug. 9, 2001).

At the time Mr. Herbison accepted employment on this matter, and at the time of the hearing, the ethical conduct of Tennessee lawyers was governed by Tennessee Supreme Court Rule 8, also

known as the Code of Professional Responsibility.[1]  Disciplinary Rule 5-101 of the Code of Professional Responsibility provides that, "[e]xcept with the consent of the client after full disclosure, a lawyer shall not accept employment if the exercise of professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests."  Tenn. Sup. Ct. R. 8, DR 5-101(A) (2002).[2]  In the context of this case, it is reasonable to anticipate that Mr. Herbison's financial, business and/or personal interests may affect his professional judgment insofar as advising the Defendant about any possible ineffectiveness on his part with respect to the direct appeal.[3]  Where an attorney is placed in a position of divided loyalties -- here, between himself and his client -- an actual conflict is created.  See State v. Culbreath, 30 S.W.3d 309, 312 (Tenn. 2000) (holding that an actual conflict of interest "includes any circumstance in which an attorney cannot exercise his or her independent professional judgment free of 'compromising interests and loyalties'").  An attorney with an actual conflict of interest is subject to disqualification.  See State v. Tate, 925 S.W.2d 548, 553 (Tenn. Crim. App. 1995).

As provided by Disciplinary Rule 5-101, actual conflicts of interest can be waived by the client after full disclosure.  Thus, before an attorney who maintains an actual conflict of interest in his or her representation of a client is allowed to continue his or her representation, there must be (1) full disclosure of the conflict of interest, and (2) an effective waiver by the client.  To be effective, the waiver must demonstrate that the client fully understands the nature of the conflict and how it might affect him or her; that the client understands his or her right to the appointment of other counsel if necessary; and that, notwithstanding the potential ill effects, the client desires to proceed with his or her lawyer.  See Burns, 2001 WL 912817, at *7.  Even where a client demonstrates a knowing and voluntary waiver of a conflict of interest, however, trial courts have "substantial latitude in refusing waivers of conflicts since the likelihood and dimensions of conflict are often difficult to predict."  Id., 2001 WL 912817, at *4.

Our review of a trial court's disqualification of an attorney on the basis of a conflict of interest is limited to determining whether the trial court thereby abused its discretion.  See Clinard v. Blackwood, 46 S.W.3d 177, 182 (Tenn. 2001).  An abuse of discretion occurs when the trial court applies an incorrect legal standard, or reaches a decision which is against logic or reasoning and causes an injustice to the complaining party.  See State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999).  However, this Court closely scrutinizes a trial court's order of disqualification because it involves

---

[1]Effective March 1, 2003, the Code of Professional Responsibility was replaced by the Tennessee Rules of Professional Conduct, likewise codified at Tennessee Supreme Court Rule 8.

[2]The analogous provision in the Rules of Professional Conduct states that "A lawyer shall not represent a client if the representation of that client may be materially limited by . . . the lawyer's own interests, unless:  (1) The lawyer reasonably believes the representation will not be adversely affected; and (2) The client consents in writing after consultation."  Tenn. Sup. Ct. R. 8, RPC 1.7(b) (2003).

[3]This Court is familiar with Mr. Herbison's zealous advocacy on behalf of his clients.  The matters addressed herein are in no way meant to imply that Mr. Herbison's representation of the Defendant on direct appeal was deficient.

an interpretation of rules governing ethical behavior of attorneys.  See Clinard, 46 S.W.3d at 182.

We turn now to the evidence adduced at the hearing on this matter.

The Defendant testified that he has a twelfth grade education and also worked on a paralegal course in prison in the late 1980s for about a year and a half.  He explained that his parents retained Mr. Herbison to represent the Defendant at the Defendant's request.  He stated that he told his parents that Mr. Herbison had done

> an excellent job on the [direct] appeal[] with nothing to work with.  And I said -- I told them that the man didn't have anything to work with much, and he has done real good, even though it was denied, and I think that he would probably be a good lawyer to do the post conviction, probably my best chance to have a good lawyer, and I wanted . . . Mr. Herbison to be on the post conviction because he already knew the case and the ins and outs of what has been done legally about this and that.

The Defendant testified that, prior to his retention, Mr. Herbison explained to the Defendant that, if he represented the Defendant on the post-conviction, the Defendant would not be able to complain about anything Mr. Herbison had done or failed to do on the direct appeal.  The Defendant explained that Mr. Herbison had encouraged him to consult with other attorneys, but the Defendant did not do so.  The Defendant stated that he had reviewed the work that Mr. Herbison had done on his direct appeal, and that he was satisfied that Mr. Herbison had done "quite a good job" on that matter.  He also let an inmate-paralegal in prison review the direct appeal, who described it to the Defendant as "real good work."  He stated that it did not bother him "at all" that he would not be able to complain about Mr. Herbison's work on the direct appeal if Mr. Herbison represented him on post-conviction.  The Defendant reiterated that he thought Mr. Herbison was his "best prospect" to handle the post-conviction proceeding, adding that Mr. Herbison was already familiar with the case and would not need additional time to get acquainted with the facts and proceedings that had already taken place.

On cross-examination, the State's attorney's asked the Defendant what would happen if the Defendant were successful in his quest for post-conviction relief.  The Defendant responded that he did not "really understand the question."  When the State reframed the question in terms of what the result would be if he "won" his proceeding, the Defendant responded:

> The result would be tremendous because this has been devastating.  This has taught me something I never realized before.  It has taught me that I have been a child all of my life in and out of prison, in and out of prison.  It doesn't make any sense.  And it has taught me to be dependent upon my own self and not dependent o[n] others.  It has taught me to certainly know the difference between right and right [sic].  And it has also taught me to listen and then respond, and it has taught me many things.  But I really think that it has -- actually, to be completely honest, this has helped me because I did not commit this offense, and that is why I am here today.
> . . .

-4-

But I really don't understand the question of what you are trying to find. (emphasis added). When asked if he understood the nature of the conflict which was at issue in the hearing, the Defendant replied, "I really don't understand why any of this is taking place because I feel that two American citizens anywhere inside the United States, never been arrested before in their life, can hire any attorney they want to, under any circumstances." He explained that he did not want a new lawyer because he "would have to explain this and that and this and that over again," and that he is "not very good at that."

The State's attorney asked the Defendant if anyone had explained to him that he could raise as an issue in his post-conviction petition that the suppression issue had not been raised in his direct appeal. The Defendant replied that he did not remember talking about that. He stated that he did understand that now, and that he would not be able to raise that issue in his petition if Mr. Herbison continued to represent him. When asked why he was willing to give up a potential issue, the Defendant responded, "Because I don't want no more Public Defenders. That is what got me here now. I had a Public Defender who didn't do nothing. My mom and dad has hired [Mr. Herbison] with all of the money they had. I can't get no more lawyers." He explained further:

> And he is the only lawyer that I trust and that I know that does good work. I know he does good work. I saw it. I read it. I looked at it. I went over it a lot.
> And I need some help, and I don't know lawyers. I have been -- I have been locked up in prison for the last four years. I don't know how I know anybody. And I just need a good lawyer, and I know he is a good lawyer. And I don't understand a lot.

He reiterated that he understood "right now" that he was waiving the issue of Mr. Herbison's failure to raise the suppression issue on direct appeal if he kept Mr. Herbison as his lawyer in this proceeding.

On redirect, the Defendant explained that Mr. Herbison had kept telling him that he would not be able to complain about anything Mr. Herbison had done on the direct appeal if the Defendant retained him on the post-conviction. Mr. Herbison then asked the Defendant if, after hearing the State's questions, he still wanted Mr. Herbison to represent him. The following colloquy then occurred:

> A. I guess that would be -- I don't know. I understand -- see, the State hasn't heard the truth. The State doesn't even know the truth, and I was interrupted when I was trying to tell the State the truth, and so that stopped. I don't even remember what your question was right this minute. But the State needs to know about the night that I got arrested, where I was –
> Q. Are you having some difficulty?
> A. Well, I am having difficulty because I shouldn't be locked up. I should not be locked up. Yeah, I admitted to smoking a joint. Sure. That don't make me no child molester. I admitted to driving without a driver's license, but

> that don't make no child molester. I mean the State needs to know about the night I got locked up. This is crazy.
>
> Q.     Given everything that you know now, who do you want to represent you in this post conviction proceeding?
>
> A.     I am mixed up. I don't know what to do. I mean I know you do good work, and I would rather have you. But then [the State's attorney] says that it's going to hurt me. But I know you know the case. And if I could just let the State know something that has never been talked about. I was not allowed to say a word at trial. I didn't say anything. The State don't even know what happened the night that I got arrested, and it is very, very, very important, and it deals with these[sic] suppression hearing. And if I could just have the opportunity to tell Your Honor what happened that night, I would maybe get some way to pick -- make a better decision because I don't know.

In response to the Defendant's attempts to address the merits of his post-conviction claim, Mr. Herbison explained that he would have the opportunity to tell that story when the trial court held the hearing on the merits of the petition. Mr. Herbison then asked, "With that understanding, who do you want to represent you?" The Defendant responded, "Okay. Now, here is my question? Now, when the Court, for the very first time, hears the truth and it deals with suppression, where is it going to leave me when it can't be brought back up?" The Defendant then began to describe his arrest and interrogation.

At this point, the trial court intervened and explained the issue involving the suppression motion which the Defendant would have to waive in order to continue being represented by Mr. Herbison. The court then asked the Defendant if he wanted some time to make his decision. The Defendant stated, "Your Honor, I need to speak with the District Attorney --" The judge repeated his question. The Defendant responded, "I can't answer [the question] until I speak to someone."

After a recess, Mr. Herbison recalled the Defendant to the stand. After establishing that they had discussed this matter during the recess, Mr. Herbison asked the Defendant what his understanding was of what could and what could not be brought up in the post-conviction proceeding regarding the suppression issue. The Defendant answered, "My understanding is that the filing or the adequacy or inadequacy by [trial counsel] could be brought up, not the ruling." Later, the trial court asked the Defendant if he had discussed with Mr. Herbison prior to the hearing the advantages and disadvantages of the suppression issue having not been raised in the direct appeal. The Defendant answered, "No, sir."

At the end of the hearing, the trial court ordered Mr. Herbison to withdraw as post-conviction counsel to the Defendant. The court stated:

> There is an obvious conflict between a person who has handled an appeal for a defendant and then turns around to file a petition for post-conviction and it is quite obvious he can't raise anything, any effective assistance of counsel issues in the post

conviction as it relates to the appeal since he was the appellate counsel. So the issue then is whether [the Defendant] fully understands that he forever waives that potential remedy.

For the first time, according to [the Defendant's] testimony, he learned that there is a potential issue that could have been raised regarding the ineffective assistance of counsel on appeal. He learned that today.

Now he says later that, no, he thought about it. And the Court will have some comment on that in a few moments.

But initially in his cross-examination by the State and when asked by the Court on numerous occasions, "Understanding that, is it your desire to go further with Mr. Herbison?"

And quite frankly, he would not answer those questions that was put to him by the State and was put to him by the Court.

The Court draws the conclusion from that that [the Defendant] did not understand what he was waiving. He had only considered that for the first time. It should have been a matter that he and Mr. Herbison had -- should have discussed thoroughly before today. According to the [D]efendant, they had only discussed in general terms that he could hire another attorney, but he was without any independent legal advice with regard to whether he should waive those appellate issues, except maybe for some inmates. And the inmates usually are not very good lawyers, . . . .

The Court is troubled that [the Defendant] changed his story, and that was after he had consulted with Mr. Herbison. What the Court is troubled about is that it points to the problem here because [the Defendant] was clearly confused; clearly in the eyes of the Court, did not understand those issues that he might be raising, but after it was explained to him by his attorney at the break, he then understood it.

Therein is the problem.

The Court finds that the [D]efendant has not freely and voluntarily, and more particularly -- or he has freely and voluntarily, but has not knowingly, waived the potential conflict that could arise from Mr. Herbison's employment in this matter.

The record fully supports the trial court's conclusion that the Defendant did not have a thorough understanding of the nature of the conflict of interest that Mr. Herbison's representation created. Given that the Defendant did not possess the requisite thorough understanding, the trial court did not abuse its discretion in refusing to accept the purported waiver. Accordingly, the trial court committed no error in ordering Mr. Herbison removed from the case.

In conjunction with removing Mr. Herbison from his representation of the Defendant in this proceeding, the trial court ordered Mr. Herbison to refund the entire retainer he had been paid by the Defendant's parents. Mr. Herbison now contends that the trial court was without authority to do so. The State responds that this issue has been waived.

As noted above, this matter is before this Court upon an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. "For interlocutory appeals, the only issues that can be raised are those certified in the trial court's order granting permission to seek an interlocutory appeal and in the appellate court's order granting the interlocutory appeal." Heatherly v. Merrimack Mut. Fire Ins. Co., 43 S.W.3d 911, 914 (Tenn. Ct. App. 2000). In this case, the trial court's order states the following:

> The attorney of record on this post-conviction matter, John Edward Herbison, is hereby removed as attorney for the petitioner. Mr. Herbison shall return the entire retainer fee which he has been paid to [the Defendant's] family in order that the petitioner may retain the attorney of his choice.
> The Court further grants permission for an interlocutory appeal from the Court's determination in this matter pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, both on the Court's own initiative and in accordance with the indication of petitioner's counsel that, had the Court not acted on its own initiative as to permission to appeal, counsel would have made an oral motion therefor. . . . .
> . . . Permission to appeal is granted in order to develop a body of law as how the right to retained counsel of one's choosing relates to [post-conviction] proceedings.

We note that at the conclusion of the hearing of this matter, the trial court expressly granted permission to appeal the issue concerning Mr. Herbison's retainer, remarking that it was unsure whether it had the authority to order the return of the retainer.[4]

We must also consider, however, this Court's order granting the interlocutory appeal. That document grants review of the trial court's decision "to relieve retained counsel of further representation of the appellant in his post-conviction proceeding." The order makes no express reference to the trial court's ruling concerning Mr. Herbison's retainer. Nevertheless, we do not think it necessary to construe our order so narrowly as advocated by the State. The trial court's order of disqualification included, in pari materia, an order that Mr. Herbison refund his retainer. The application filed in this Court seeking Rule 9 review refers to the ordered refund. This matter has not been waived.

Nevertheless, the record does not contain sufficient information to permit this Court to rule on the trial court's order of refund. Our supreme court has held that an attorney's breach of his or her ethical obligations may give rise to a forfeiture of his or her fees. See Crawford v. Logan, 656 S.W.2d 360, 364 (Tenn. 1983). Before a forfeiture is warranted, however, there must be a finding of prejudice to the client. See id. at 365. Thus, "[e]ach case involving misconduct of an attorney

---

[4]With respect to the trial court's expressed concern with its authority to order a refund, we note that our supreme court has previously stated that "[i]t is well settled that the licensing and regulation of attorneys practicing law in courts of Tennessee is squarely within the inherent authority of the judicial branch of government." Smith County Educ. Ass'n v. Anderson, 676 S.W.2d 328, 333 (Tenn. 1984).

and the forfeiture of his fee must be viewed in the light of the particular facts and circumstances of the case." Id. Our court of appeals has noted that

> [c]onsiderations relevant to the question of forfeiture include: (1) the gravity of the violation, (2) the willfulness of the violation, (3) the effect of the violation on the value of the lawyer's work for the client, (4) any other threatened or actual harm to the client, and (5) the adequacy of other remedies.

Hiram Seibers, Jr. v. Pepsi-Cola bottling Co., et. al., No. M1999-02559-COA-R3-CV, 2000 WL 1862833, at *4 (Tenn. Ct. App., Nashville, Dec. 21, 2000).

In this case, the trial court did not make all of the findings necessary to support an order of forfeiture of Mr. Herbison's fees. Accordingly, we vacate that portion of the trial court's order and remand for further proceedings in order to determine whether, and in what amount, if any, a forfeiture of Mr. Herbison's fee is warranted. We also note that it may be helpful to the trial court to hear testimony from the Defendant's parents who are the other parties to Mr. Herbison's fee agreement. Pertinent to the inquiry is what portion of any fees already paid had actually been earned as of the time the trial court issued its notice of hearing on the matter of Mr. Herbison's representation. It may also be helpful for the trial court to refer to Rule of Professional Conduct 1.5, which sets forth a number of considerations useful in determining the reasonableness of any fee which the trial court determines Mr. Herbison may be entitled to keep. See Tenn. Sup. Ct. R.8, RPC 1.5.

The judgment of the trial court disqualifying Mr. Herbison from further representation of the Defendant in this matter is affirmed. The trial court's order regarding the refund of Mr. Herbison's fee is remanded for further proceedings as set forth above.

_____
DAVID H. WELLES, JUDGE