IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 10, 2015 Session

IRIS TERESA BOWLING CHAMBERS v. FAYE BOWLING DEVORE, ET AL.

Appeal from the Chancery Court for Fayette County
No. 14533     James F. Butler, Chancellor

_____

No. W2013-02827-COA-R3-CV – Filed July 17, 2015
_____

This is an appeal from the denial of Appellant's Tennessee Rule of Civil Procedure 60.02 motion. Appellee, Appellant's law firm, filed an attorney's lien against real property that was awarded to Appellant by partition in the underlying case. The trial court set the amount of the lien based on the commissioners' valuation of the real property. Appellant disputed the amount of attorney's fees by filing a motion to compel arbitration, in which she specifically argued that, under their contract, the parties were required to arbitrate any dispute concerning the amount of attorney's fees. The trial court did not specifically rule on Appellant's motion to compel arbitration, but inferentially denied the motion when it granted Appellee's motion to sell the property to satisfy the previously granted attorney's lien. Appellant then filed a Rule 60.02 motion for relief from the order enforcing the attorney's lien. Her motion was denied, and she appeals. Although the attorney's lien is valid, we conclude that the trial court erred in enforcing the lien as a judgment when there was a dispute concerning the enforceability of the parties' contract, the amount of attorney's fees, and the proper means of calculating those fees. Accordingly, we vacate the order enforcing the attorney's lien in the amount awarded and remand the case for an evidentiary hearing to resolve the questions concerning the parties' contract and to determine the proper amount of attorney's fees, which may then be enforced against the lien. Vacated and remanded.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is
Vacated and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Julie C. Bartholomew and Valerie T. Corder, Somerville, Tennessee, for the appellant, Iris Teresa Bowling Chambers.

David L. Douglas, Somerville, Tennessee, and Joseph T. Townsend, Memphis, Tennessee, for the appellee, Minor Douglas, PLLC.


**OPINION**

**I. Background**

This case began on or about September 21, 2007 when Appellant Iris Teresa Bowling Chambers filed a complaint against several defendants seeking to determine heirship, quiet title and for partition of certain real property, in which Ms. Chambers claimed an interest. The original case was appealed to this Court in *Chambers v. Devore*, No. W2008-02548-COA-R3-CV, 2009 WL 3739443 (Tenn. Ct. App. Nov. 9, 2009), *perm. app. denied* (Tenn. May 12, 2010) ("*Chambers I*"). In *Chambers I*, we reversed the trial court's grant of summary judgment and remanded the case to the Fayette County Chancery Court for further proceedings. At the time the initial complaint was filed, Ms. Chambers was represented jointly by Attorney K. Jayaraman and the Appellee Minor Douglas, PLLC ("Minor Douglas").[1] No written contract of employment was executed concerning this representation. However, during the course of the litigation, Ms. Chambers dismissed attorney Jayaraman and hired the Law Offices of Tommy L. Fullen & Joseph T. Townsend ("Fullen & Townsend") to represent her. On April 11, 2008, Ms. Chambers executed a written employment contract in favor of Fullen & Townsend (the "April 11, 2008 Contract"). The April 11, 2008 Contract was signed by attorney Thomas M. Minor and provided for fees "[o]n a contingent basis of one-third (or forty percent 40% if the case is appealed) of any amount that client receives in excess of $1,360,000.00 in inheritance from the Estate of Robert Milton Stone." There is no explanation in the record as to Mr. Minor's association with the Fullen & Townsend firm. However, on or about June 30, 2010, Ms. Chambers entered into an employment contract with Minor Douglas (the "June 30, 2010 Contract"). This contract, like the April 11, 2008 Contract, was signed by Mr. Minor on behalf of Minor Douglas. As discussed below, there is a dispute concerning the execution of these contracts as well as the apparent discrepancy between the two documents regarding the calculation of attorney's fees. The June 30, 2010 Contract provides, in relevant part, that:

---

[1] We note that Minor Douglas, PLLC was the legal name of the law firm at the time of the entry of the November 17, 2011 order that is the subject of this appeal. The firm is currently known as Minor Johnston Douglas, PLLC.

2

For services rendered or to be rendered, I hereby set over and assign to my attorneys . . . an undivided interest of the greater of the hourly rate [$250 per hour, plus expenses] . . . or 30% of any amount that [Ms. Chambers] receives in inheritance from the Estate of Robert Milton Stone as a bodily heir of Nellie Stone Bowling[, whichever is greater].

This contract further provides that Minor Douglas "will have the right to place an attorney's fee lien against any recovery . . . ."

Upon remand from this Court, Ms. Chambers' complaint to determine heirship, quiet title, and for partition was ultimately decided in her favor. Ms. Chambers was determined to be an heir under the will. Accordingly, on March 24, 2011, the trial court entered a consent order of partition and for the appointment of commissioners to allocate Ms. Chambers' share of the property. The March 24, 2011 order specifically requires the commissioners "to make the partition, quality and quantity relatively considered, according to the respective rights and interest of the parties as the court has adjudged . . . ." On July 26, 2011, the commissioners filed their report, in which they conclude that partition of the 1,221 disputed acres of land is feasible. The commissioners' report indicates that the tract awarded to Ms. Chambers consists of 202 Acres. Although the March 24, 2011 order did not require the commissioners to place a value on the partitioned land, their report set the value of Ms. Chambers' tract at $965,000. On September 1, 2011, the trial court entered a consent order confirming the commissioners' report and awarding the partitioned tract to Ms. Chambers. This consent order does not set the value of Ms. Chambers' tract, although the court notes that all parties had "unanimously consented to and moved the court to confirm and approve the commissioners' report, without exceptions . . . ."

On November 7, 2011, Minor Douglas recorded a Notice of Attorneys Lien for Fees and Lien Lis Pendens in the Register's Office of Fayette County (Instrument 110057744). The lien claimed by Minor Douglas was in the amount of $289,500.00, "representing thirty percent (30%) of the amount of property [Ms. Chambers] received as her share of the Estate . . . ." On the same day, November 7, 2011, Minor Douglas filed a motion in the trial court to enforce its attorney's lien, asking the court to enter an "[o]rder recognizing and enforcing its attorneys lien by noting said lien within the body and language of the deed to be executed and delivered by the Clerk and Master to [Ms. Chambers]." There is no dispute in the record that Ms. Chambers received notice of both the Notice of Attorneys Lien and the motion for enforcement. The trial court held a hearing on the attorney's lien on November 17, 2011. Ms. Chambers did not dispute Minor Douglas' right to an attorney's lien, which is provided for both in her contract with Minor Douglas and by state statute. Tennessee Code Annotated Section 23-2-102 provides that "[a]ttorneys and solicitors of record who begin a suit shall have a lien upon the plaintiff's or complainant's right of action from the date of the filing of

3

the suit." Ms. Chambers contends that because she did not contest Minor Douglas' right to an attorney's lien, she did not make an appearance at the November 17, 2011 hearing to establish the lien. Although she did not dispute Minor Douglas' right to an attorney's lien, as discussed *infra*, Ms. Chambers did dispute the amount of the lien.

Following the hearing, on November 17, 2011, the trial court entered an order on Minor Douglas' motion to enforce its lien. Therein, the court held, in pertinent part, as follows:

> 1. A lien in favor of Minor Douglas . . . in the amount of $289,500 representing thirty percent (30%) of the Commissioners' appraised value of the property [Ms. Chambers] received as her share of the Estate . . . is hereby declared valid and enforceable and shall be noted within the language of the deed of the Clerk and Master conveying to [Ms. Chambers] in fee simple and absolute title to the property identified by the Court appointed Commissioners as Tract No. 2 consisting of approximately 202 acres . . . .

> 2. It is further ordered that the court shall retain jurisdiction over this proceeding concerning the issue of further enforcement of the said attorney's fee lien in order to allow [Ms. Chambers'] counsel the opportunity to seek further enforcement of said lien should its fee remain unsatisfied for a period exceeding 120 days from the date of entry of a final judgment in this cause, the Court finding that the above described property which is the subject of [Ms. Chambers'] counsel's lien is a portion of the property which was the subject matter of these proceedings.

On December 15, 2011, the trial court entered judgment in the underlying lawsuit and released Minor Douglas' lien lis pendens, but not its attorney's lien.

On May 11, 2012, Minor Douglas filed a motion for sale of property, seeking to enforce its attorney's lien based on Ms. Chambers' alleged failure to pay Minor Douglas $289,500.00 in fees within 120 days of the December 15, 2011 order.[2] In its motion, Minor Douglas stated that it "ha[d] not been paid the amount of the indebtedness due to them from [Ms. Chambers]," and sought sale of the property awarded to Ms. Chambers in the underlying lawsuit to satisfy the attorney's fees. In its motion, Minor Douglas relies on

---

[2] Ms. Chambers was awarded $25,000 in attorney's fees against the defendants in the underlying lawsuit. Ms. Chambers paid Minor Douglas this $25,000. Accordingly, in its motion for sale of property, Minor Douglas alleged that Ms. Chambers owed a total of $264,500 in fees (i.e., $289,500 minus $25,000).

4

Tennessee Code Annotated Section 26-4-101, *et seq.* as authority for the sale of the property.[3] Minor Douglas filed an amended motion for sale of property on June 5, 2012. The amended motion states that, since the filing of the initial motion for sale of property, Minor Douglas had received additional payments from Ms. Chambers in the amount of $14,095.86. The record shows that Ms. Chambers sold timber from the property and tendered the payment to Minor Douglas. The amended motion for sale of property states that Ms. Chambers has an outstanding balance of $257,803.70 due and owing for attorney's fees.

On July 24, 2012, Ms. Chambers filed a motion to compel arbitration, a motion to modify the order to enforce attorney's lien, and a response objecting to the sale of property. Therein, she states, in relevant part, that:

> The court's November 17, 2011 order purports to establish a contractual attorneys fee and lien in the amount of $289,500 in favor of . . . the law firm of Minor Douglas, PLLC. As the parties are contractually bound to submit disputed issues concerning attorneys fees to arbitration,[4] [Ms. Chambers] requests the court to reconsider and modify its November 17, 2011 order.

---

[3] Tennessee Code Annotated Section 26-4-101 provides, in relevant part:

(a)     The creditor whose execution has been returned unsatisfied, in whole or in part, may proceed in the court granting judgment . . . to compel discovery of any property . . . in action or money due such defendant . . . .

Tennessee Code Annotated Section 26-4-102 addresses a court's power to reach property and provides, in pertinent part, that:

The court has power to compel discovery, and to prevent transfer, payment, or delivery of the property, and to subject the same to the satisfaction of the judgment or decree . . . .

[4] Both the April 11, 2008 Contract and the June 30, 2009 Contract contain the following identical provision:

In the event of any dispute as a result of any provision hereof for the interpretation hereof or otherwise or in any way arising out of our relationship . . . [a]ll such disputes and any counterclaim against us in an action for collection for set off because of any alleged improper acts or acts on our part shall be submitted to and shall be determined by the arbitrators who shall be a panel of three (3) arbitrators. . . .

***

Minor Douglas, PLLC sought and received an order declaring and enforcing a lien for attorneys fees in the amount of $289,500.00, said amount being 30% of the Commissioners' appraised value of real property inherited by [Ms. Chambers]. In the event the Chancery Court declines to refer this matter to arbitration, [Ms. Chambers] moves the court to set aside this ruling and to reconsider the amount of attorneys fees, on the following grounds:

***

I. The June 30, 2010 contract upon which the $289,500.00 fee was based was a modification of a previous contract dated April 11, 2008. [Ms. Chambers] contends that the June 30, 2010 contract modification was not supported by reciprocal consideration and is, therefore, unenforceable;

II. Even if the contract modification were supported by reciprocal consideration, its terms are ambiguous in describing how the contingent attorneys fee is to be calculated. As the Former Attorneys were the drafters of the . . . [C]ontract, the ambiguity should be resolved against them;

III. The June 30, 2010 [C]ontract is unenforceable on the basis that it calls for an unreasonable attorneys fee under the circumstances.

There is no indication in the record that the trial court held a hearing on Ms. Chambers' motion to compel arbitration or otherwise ruled on the motion. Nonetheless, the trial court ostensibly denied her motion when it entered an order on August 23, 2012, wherein it granted Minor Douglas' amended motion for sale of property. Although the trial court granted Minor Douglas' motion, it delayed the sale to allow Ms. Chambers

30 days from July 26, 2012 to produce to [Minor Douglas] a fully executed written purchase and sale agreement from a viable good faith purchaser containing no contingencies for the purchase of approximately 20 acres of the subject property . . . for not less than $6,000 per acre, with closing to take place not less than thirty (30) days thereafter, and with all net proceeds of sale being made payable to [Minor Douglas].

On September 19, 2012, Minor Douglas filed a motion for judicial order of sale indicating that on or about August 23, 2012, it had received, from Ms. Chambers, a copy of a document purporting to be a purchase and sale agreement for approximately 15 acres of the property at $5,000 per acre. Because the number of acres and the amount per acre were below those set

6

out in the August 23, 2012 order, Minor Douglas requested that the property be sold at auction to satisfy its attorney's fees.

On November 16, 2012, Ms. Chambers filed a motion for relief pursuant to Tennessee Rule of Civil Procedure 60.02. Therein, Ms. Chambers seeks relief from the trial court's November 17, 2011 order on Minor Douglas' motion to enforce its attorney's lien. As grounds for her Rule 60 motion, Ms. Chambers asserts, *inter alia*, that the trial court's order granted more relief than Minor Douglas had requested in its motion. Specifically, although Minor Douglas had asked only that the attorney's lien be noted in the Clerk and Master's Deed to Ms. Chambers, the trial court, without notice to Ms. Chambers or opportunity for her to be heard, determined the amount of the lien. In further support of her Rule 60 motion, Ms. Chambers argued that, in its November 17, 2011 order, the trial court failed to "make findings as to the various factors that are required to be considered in setting a reasonable attorneys fee, set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct."

On March 13, 2013, Minor Douglas filed an amended motion for judicial order of sale. At that time, Minor Douglas was in receipt of $68,310.60 from Ms. Chambers' private sale of 15 acres of her tract. In addition to noting the payment of $68,310.60, Minor Douglas' amended motion states that, "after payment of all outstanding expenses from both the timber proceeds of $14,095.86, as well as the initial $25,000.00 payment . . . the sum of $189,493.10 remains due and owing from the original attorneys' fee award of $289,500.00."[5] The case was subsequently transferred to Chancellor James F. Butler by order of April 9, 2013.[6]

On October 9, 2013, Minor Douglas filed a response in opposition to Ms. Chambers' Rule 60 motion. In its response, Minor Douglas argued, *inter alia*, that the doctrines of res judicata, laches, acquiescence/estoppel, and unclean hands should bar Ms. Chambers' request for relief under Rule 60.02.

Ms. Chambers' motion for Rule 60.02 relief was heard on October 16, 2013. Although there is a transcript of the hearing in our record, as noted in the trial court's order denying Rule 60 relief, no proof was presented in support of or opposition to the motion; rather, the hearing included only the respective arguments of counsel.

The trial court issued its ruling by letter of October 28, 2013. The letter ruling was incorporated by reference into the court's November 21, 2013 order denying Ms. Chamber's

---

[5] The $189,493.10 sum appears to be a typographical error. By our calculation, the correct amount would be $182,093.54 ($289,500 minus $25,000 minus $14,095.86 minus $68,310.60).

[6] There is no indication in the record as to the reason for the transfer.

7

motion for Rule 60.02 relief.  In relevant part, the trial court held that:

> [Ms. Chambers] alleges that the trial court set the attorney's fee for [Minor Douglas] in the November 17, 2011 hearing which exceeded the relief sought in the previous Motion, and that the court in setting the fee did not comply with RPC 1.5 in making findings to support the fee. [T]he court did not in fact set the fee since it was determined by the terms of the contract entered into between [Ms. Chambers] and [Minor Douglas].  There is no transcript of the hearing, and it is impossible to know what findings the court made or did not make in its mention of attorney's fee in the Order.  In fact, no findings were necessary because the contract set the terms of the attorney's fee.  The issue is without merit.

Ms. Chambers appeals.

## II. Issue

Ms. Chambers raises several issues in her appellate brief; however, we perceive that the dispositive issue in this case is whether the trial court erred in denying Ms. Chambers' request for relief under Tennessee Rule of Civil Procedure 60.02.

## III. Standard of Review

Tennessee Rule of Civil Procedure 60.02 states, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

Relief under this rule is considered "an exceptional remedy." ***Nails v. Aetna Ins. Co.***, 834 S.W.2d 289, 294 (Tenn. 1992). The function of the rule is to "strike a proper balance

between the competing principles of finality and justice." ***Banks v. Dement Constr. Co., Inc.***, 817 S.W.2d 16, 18 (Tenn.1991) (quoting ***Jerkins v. McKinney***, 533 S.W.2d 275, 280 (Tenn.1976)). "Rule 60.02 is meant to be used only in those few cases that meet one or more of the criteria stated." ***Toney v. Mueller Co.***, 810 S.W.2d 145, 146 (Tenn.1991).

We review a trial court's decision to grant or deny relief pursuant to Rule 60.02 under the abuse of discretion standard of review. ***Henry v. Goins***, 104 S.W.3d 475, 479 (Tenn. 2003). Under this standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." ***Id***. Under the abuse of discretion standard, the appellate court may not substitute its judgment for that of the trial court. ***Id***. Furthermore, our Supreme Court emphasizes that great deference is given to the trial court when reviewing its decision to grant or deny relief pursuant to Rule 60.02. ***Henry***, 104 S.W.3d at 479.

## IV. Analysis

### A. Laches

Ms. Chambers' seeks relief under Rule 60.02(1),(2), and (5). A motion for relief under Rule 60.02(1) or 60.02(2) must be made within a reasonable time but not more than one year after the judgment, order or proceeding was entered. Tenn. R. Civ. P. 60.02. One of the grounds for the trial court's denial of the Rule 60.02 relief was its finding (in the October 28, 2013 ruling) that Ms. Chambers was "guilty of laches." Specifically, the court stated that Ms. Chambers' motion "was not timely," "in that it was not filed within a reasonable time after [she] was fully aware of the circumstances and considering all of the other actions that took place after November 17, 2011 in the interim prior to the filing of the Motion on November 16, 2012."

3 Nancy F. MacLean. <u>Tennessee Practice: Rules of Civil</u> § 8:17 (4th ed.) provides, in pertinent part, that:

> Under the doctrine of laches, equitable relief is denied to one who sleeps on his or her rights and fails to protect his or her interests. The elements are: (1) an unreasonable delay on the part of the plaintiff in commencing the action, and (2) prejudice to the defendant as a result of the delay.
>
> The determinative test as to the availability of laches as a defense is not the length of time that has elapsed, but whether, because of the lapse of time,

the party relying on laches as a defense has been prejudiced by the delay. "Prejudice includes the loss of evidence, expenditure of money, change of value, or a change of a party's right." Laches is an equitable defense and where the delay in commencing the suit is explained or justified, laches is not applied.

Based upon her own statement that she did not appear at the November 17, 2011 hearing because she did not object to the entry of an attorney's lien, per se, it is reasonable to assume that Ms. Chambers construed the November 17, 2011 order as merely establishing the lien, as opposed to rendering a judgment in favor of Minor Douglas for fees of 30% of the value the commissioners' set on Ms. Chambers' tract. Regardless, in response to Minor Douglas' May 11, 2012 motion for sale of property and its June 5, 2012 amended motion for sale of property, Ms. Chambers took action to make the trial court aware of possible errors in the amount and calculation of attorney's fees when, on July 24, 2012 (just over one month from the filing of Minor Douglas' amended motion and before the trial court heard the motion), she filed her motion to compel arbitration and objection to the sale of the property. As set out in full context above, in her motion, Ms. Chambers specifically states that the "November 17, 2011 order [erroneously] purports to establish a contractual attorney's fee and lien in the amount of $289,500 in favor of . . . the law firm of Minor Douglas, PLLC." By this same motion, Ms. Chambers also raises issues concerning the enforceability of her contract(s) with Minor Douglas, as well as the reasonableness of the fees. In this regard, Ms. Chambers acted to protect her interests and to draw attention to possible errors much earlier than the November 16, 2012 filing of her Rule 60.02 motion. However, there is no indication that the trial court heard or ruled on the motion to compel arbitration, or that it otherwise gave Ms. Chambers an opportunity to dispute the amount of the attorney's fees in an evidentiary hearing, *see* further discussion *infra*. Rather, the court proceeded to grant Minor Douglas relief in the form of granting its amended motion for sale of property by order of August 23, 2012. Ms. Chambers then filed for Rule 60.02 relief, which was denied.

The fact that Ms. Chambers attempted to protect her interests in a timely manner precludes the application of the doctrine of laches in this case. Moreover, there is no evidence that Minor Douglas has been prejudiced by any delay on Ms. Chambers' part. In fact, as set out above, Minor Douglas has received substantial payments from Ms. Chambers throughout these proceedings, i.e., $25,000 from her settlement with defendants; $14,095.86 from the sale of timber from the property; and $68,310.60 from the sale of 15 acres of the tract. Indeed, if there was any prejudice in this case, it fell on Ms. Chambers, who made the foregoing payments in the absence of proper adjudication of her issues regarding the service she received from Minor Douglas and calculation of the proper amount of attorney's fees. In its October 28, 2013 ruling, the court states that "the contract set the terms of the attorney's fees;" however, this is the very question that Ms. Chambers raises in her motion to compel

10

arbitration and, indeed, in her motion for Rule 60.02 relief. In simply adopting the commissioners' valuation of the property and failing to adjudicate Ms. Chambers' disputes concerning the attorney's fees, the trial court ostensibly enforced the attorney's lien as a judgment in favor of Minor Douglas for its attorney's fees.

## B. Enforcement of Attorney's Lien

As discussed above, Ms. Chambers has never objected to Minor Douglas obtaining an attorney's lien in this case. Indeed, Minor Douglas is entitled to an attorney's lien under both contract and statute. This Court explained the purpose and historical background of attorney liens in *Starks v. Browning*, 20 S.W.3d 645, 650 (Tenn.Ct.App.1999):

> The relationship between a client and an attorney is essentially contractual. *See Alexander v. Inman*, 974 S.W.2d 689, 694 (Tenn.1998); *In re Ellis*, 822 S.W.2d 602, 607 (Tenn.Ct.App.1991). In its most basic terms, this contract involves the exchange of competent legal services in return for an agreement to pay a reasonable fee. The attorney is obligated to exercise the utmost good faith in the discharge of his or her duties to represent the client. *See Crawford v. Logan*, 656 S.W.2d 360, 364 (Tenn.1983); *Fitch v. Midland Bank & Trust Co.*, 737 S.W.2d 785, 789 (Tenn.Ct.App.1987). If the attorney discharges his or her duties appropriately, he or she is entitled to the reasonable, agreed-upon compensation without regard to the actual benefit the services might have been to the client. *See Spofford v. Rose*, 145 Tenn. 583, 611, 237 S.W. 68, 76 (1922); *Bills v. Polk*, 72 Tenn. 494, 496 (1880); *Adams v. Mellen*, 618 S.W.2d 485, 488 (Tenn.Ct.App.1981).

In order to secure payment for services an attorney has rendered to his or her client in good faith, in Tennessee

> [t]wo types of attorney's liens exist today either by the common law or by statute. The first type of lien is a retaining lien. A retaining lien is a possessory lien that permits a lawyer to retain a client's books, papers, securities, or money coming into his or her possession during the course of the representation until the attorney and client have settled their fee dispute or until the client has otherwise posted appropriate security for the outstanding fee.
> The second type of lien, a charging lien, is based on a lawyer's equitable right to have the fees and costs due for the lawyer's services in a particular action secured by the judgment or recovery in that action. Unlike a retaining lien, a charging lien is not limited to the property in the attorney's

11

possession. It attaches to any proceeds flowing from a judgment, as long as the lawyer worked to secure that judgment for the client.

*Starks*, 20 S.W.3d at 650 (citations omitted). The instant case involves the enforceability of a charging lien in favor of Minor Douglas.

In her brief, Ms. Chambers argues that the trial court erred in its November 17, 2011 order when it held that "the court shall retain jurisdiction over this proceeding concerning the issue of further enforcement of the said attorney's fee lien." Ordinarily, an "attorney, not being a party to the proceeding, may not obtain a judgment with respect to his or her fee in that action." *Id*. at 652 (citations omitted). Accordingly, "[a]fter the court has declared an attorney's lien, the lawyer may then commence a separate proceeding in a court of competent jurisdiction to enforce his or her contractual right to a fee." *Id*. (citations and footnote omitted). "In this separate suit, the issues relating to the attorney's entitlement to the fee and costs secured by the lien and to the attorney's professional negligence may be litigated." *Id.* (citations omitted). In this separate proceeding, the client, in the posture of a defendant, has "an opportunity to present defenses to the attorney's claim for a fee, including defenses that the attorney is not entitled to a fee because of professional negligence or some other basis." *Id*.

> There is one exception to the rule requiring an attorney to file a separate proceeding to collect an unpaid fee from a client. This exception applies to cases in which the money or property upon which the lien is to be enforced comes within the control of the court in the case in which the services were rendered. When the court is able to exert jurisdiction directly over the funds or property, the attorney need not resort to a separate suit to enforce his or her lien. *See State v. Edgefield & Kentucky R.R*., 63 Tenn. at 97; *Palmer v. Palmer*, 562 S.W.2d at 839.

*Starks*, 20 S.W.3d at 653. Here, the res of the lien, i.e., the partitioned property awarded to Ms. Chambers, is the subject of the underlying lawsuit and, accordingly, the court did not err in holding that it would retain jurisdiction over the property and the enforceability of the lien against that property. However, the fact that the property upon which the lien is to be enforced comes within the trial court's control merely relieves the attorney from having to file a separate lawsuit to enforce his or her right to fees. If the client disputes the attorney's right to fees or the amount thereof, the fact that the court retains jurisdiction over the res of the lien does not relieve the attorney from the burden of proving his or her fees in an evidentiary hearing. As this Court cautioned in *Starks v. Browning*, 20 S.W.3d 645 (Tenn. Ct. App. Aug. 3, 1999), "[w]hile a charging lien serves to secure an attorney's fees, it does not function as an adjudication of the rights between the lawyer and his or her client." *Id*. at 652 (citing *Pierce v. Lawrence*, 84 Tenn. 572, 577-78, 1 S.W. 204, 205-06 (1896)). In other

12

words, a charging lien does not, *ipso facto,* entitle an attorney to his or her fees; it merely secures the attorney's judgment for his or her fees. Even a lien, such as the one at issue here, in an amount certain, does not entitle the attorney to that amount; it merely protects the lawyer up to that amount on any judgment he or she obtains. However, in certain cases, a lawyer's fee may be declined:

> The courts may decline to enforce an attorney's fee contract . . . (1) when the attorney did not negotiate the contract in good faith, *see **Alexander v. Inman,*** 974 S.W.2d at 693–94, (2) when the contract provides for an unreasonable fee, *see **White v. McBride**,* 937 S.W.2d 796, 800-01 (Tenn.1996), or (3) when the attorney has otherwise breached his or her fiduciary obligations to the client and this breach has prejudiced the client's interests. *See **Crawford v. Logan**,* 656 S.W.2d at 365; ***Alexander v. Inman**,* 903 S.W.2d 686, 694 (Tenn.Ct.App.1995); ***Coleman v. Moody**,* 52 Tenn.App. 138, 155, 372 S.W.2d 306, 311–314 (1963).

*Starks*, 20 S.W.3d 650. Likewise,

> [b]oth retaining and charging lien rights may be waived or forfeited in a variety of ways. They may be lost if a lawyer fails to represent his or her client's interests faithfully, honestly, and consistently or fails to discharge his or her duties with the utmost faith. Accordingly, a client may assert an affirmative defense or counterclaim based on professional negligence in response to a lawyer's action to enforce a charging lien.

*Starks*, 20 S.W.3d at 650-51 (citations omitted).

Although somewhat muddled in the rather protracted procedural history of this case, from our review of Ms. Chambers' filings, we glean that her concerns have always been the enforceability of the contract(s) with Minor Douglas, the firm's good faith representation, the mode of calculation of fees, and the reasonableness of the fees. In other words, the gravamen of her argument appears to be that the trial court erred in enforcing the lien based upon the commissioners' valuation of the property without allowing her the opportunity for an evidentiary hearing to determine whether the April 11, 2008 contract or the June 30, 2009 contract with Minor Douglas is enforceable and, if so, the proper amount of fees. As such, the error in this case is not the entry of the lien, or the amount of the lien. Rather, the trial court's error rests upon the fact that it ostensibly enforced the attorney's lien as a judgment for attorney's fees without the required evidentiary hearing. In doing so, the court denied Ms. Chambers the opportunity to dispute those issues she raises in her motion to compel arbitration: (1) the enforceability of a contract for fees; (2) improper action on the part of her

13

attorneys that may preclude their fees; (3) the proper means of calculating the fees; and (4) the reasonable amount of attorney's fees. This error entitles Ms. Chambers to relief from the order enforcing the attorney's lien.

For the foregoing reasons, we vacate the order of the trial court enforcing the attorney's lien. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion, including, but not limited to, an evidentiary hearing in which Minor Douglas will have the burden to prove its right to fees and the amount of same. Costs of the appeal are assessed against the Appellee, Minor Douglas, PLLC, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE