IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE[1]
AT JACKSON
March 18, 2022 Session

## ROMILUS CARAWAY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 11-05881          Lee V. Coffee, Judge

_____

## No. W2021-00360-CCA-R3-PC
_____

In this appeal, the sole issue presented for our review by the Petitioner, Romilus Caraway, is whether the post-conviction court abused its discretion in dismissing his petition for post-conviction relief based on an abuse of judicial process for failure to prosecute. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and J. ROSS DYER, J., joined.

Lance R. Chism, Memphis, Tennessee, for the Appellant, Romilus Caraway.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Fouche, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On July 5, 2010, the victim, Terrance McDonald, refused to give money to the Petitioner, a person with whom the victim had a long-time "bully type relationship." The Petitioner approached the victim later that night, repeatedly struck the victim in the back of the head with a tree limb, and stole the victim's wallet, cash, and truck. When the victim was able to run away from the attack, he noticed someone driving his truck and mistakenly believed it was someone who had come to his aid. With bloody eyes blurring his vision, the victim got into his truck only later to realize the Petitioner was driving. To prevent the victim from calling the police, the Petitioner drove the victim back to where the original attack occurred and continued to beat the victim, resulting in the victim receiving multiple

---

[1] This case was heard at the historic courtroom at the University of Memphis Cecil B. Humphreys School of Law.

stitches to the back of his head and blindness to his right eye at the time of trial. Based on this conduct, following an October 2012 four-day jury trial,[2] the Petitioner was convicted as charged of aggravated robbery, aggravated kidnapping with intent to terrorize, and aggravated kidnapping resulting in bodily injury. Following a sentencing hearing, the trial court merged the two kidnapping convictions and sentenced the Petitioner as a persistent offender to a term of 30 years to be served at 85 percent for the aggravated robbery conviction and to a term of 30 years to be served at 100 percent for the aggravated kidnapping conviction. The trial court further ordered the two sentences to be served concurrently to one another but consecutively to the Petitioner's 250-month federal sentence in a separate case. State v. Romilus Caraway, No. W2013-00438-CCA-R3-CD, 2014 WL 2993862, at *1-5 (Tenn. Crim. App. June 30, 2014) no perm. app. filed.

On direct appeal, the Petitioner claimed the trial court erred in denying his motions to exclude certain evidence at trial and in permitting the jury to deliberate a second day. The Petitioner further claimed that the evidence was insufficient to support each of his convictions. Id. 2014 WL 2993862, at *1. In affirming the Petitioner's convictions, this court concluded that (1) the State properly introduced evidence of the prior robberies the Petitioner committed against the victim to show intent, and the trial court properly instructed the jury that such evidence could be considered for the limited purposes of determining whether it tended to show intent and a complete picture of the crime; (2) the admission of the victim's testimony concerning the threatening telephone calls and the victim's subsequent flight was relevant and, therefore, proper, id. at *9; (3) the substance of the threatening telephone calls to the victim were not offered to prove their truth; rather, the statements were offered to show their effect on the victim, and thus not hearsay, id. at *9; (4) the evidence strongly supported the Petitioner's convictions of aggravated robbery and aggravated kidnapping, id. at *11; and (5) the Petitioner's failure to argue that the trial court erred by requiring the jury to deliberate a second day when the jury had indicated that it was deadlocked on the aggravated kidnapping counts was waived and did not require plain error relief, id. at *12-14.

The Petitioner filed a timely pro se petition for post-conviction relief on January 27, 2015. The issues raised herein require us to undergo a detailed recitation of the remaining factual and procedural history of this case. The record shows that over the seven-year period from the filing of the Petitioner's initial pro se post-conviction petition to the instant appeal, there have been two different post-conviction courts and three different post-conviction counsel involved with the Petitioner's filing for post-conviction relief.

---

[2] Jury selection occurred on October 8, 2012, the proof began on October 9, 2012, and the case was submitted to the jury on October 11, 2012. The jury returned their verdict on October 12, 2012.

**First Post-Conviction Court.** A composite supplement to the record reflects twenty-six (26) setting dates from February 19, 2015 to August 25, 2017, before the Honorable Judge James C. Beasley, Jr., the first post-conviction court, and the same judge who presided over the Petitioner's trial. On February 19, 2015, the court appointed first counsel to represent the Petitioner. On April 2, 2015, May 29, 2015, July 10, 2015, August 14, 2015, October 2, 2015, December 11, 2015, and January 25, 2016, first counsel requested and received a continuance in the matter without objection from the State. On February 12, 2016, nearly a year after her appointment, first counsel successfully moved to withdraw from further representation of the Petitioner based on a break-down in communication with the Petitioner and because the Petitioner had threatened her "so much that [she] was very concerned for [her] safety." During the bench conference on the motion, the court asked what issues were alleged in the petition, and first counsel replied, "Well that's another issue, everything. What isn't his — He alleges ineffective assistance of counsel and trial Court error and anything." The court recalled the Petitioner's trial was a "weird case," and first counsel reminded him that "after trial started . . . there was a protective warrant issued for the alleged victim, because [the Petitioner] was threatening [the victim] again, and the grandmother and everyone."[3]

By order entered on February 16, 2016, the court appointed second counsel to represent the Petitioner. Second counsel appeared in court and requested and received continuances on March 4, 2016, April 1, 2016, May 6, 2016, June 3, 2016, July 6, 2016, July 8, 2016, August 12, 2016, September 23, 2016, November 18, 2016, and February 3, 2017, without objection from the State. On January 28, 2017, the State filed a response to the Petitioner's pro se petition for post-conviction relief denying the allegations in the petition and requesting an evidentiary hearing. On February 24, 2017, second counsel advised the court that the Petitioner would like another continuance; however, the State was "not happy" because the petition had been lingering for almost two years. The State replied that they had been waiting for second counsel to file an amended petition. In response, second counsel noted that "the jail lost all of [the Petitioner's] paperwork. But, he had his trial transcripts and his notes and that is his main issue for not signing my petition, he wants his stuff back to make sure." At the next setting, on February 27, 2017,

---

[3] The victim fled from court on the first day of trial. The next day the victim testified that he had received two telephone calls on the previous afternoon that caused him to be scared for his own safety and that of his 83-year-old grandmother. The caller told the victim that "your grandmother, she's in the front room watching television," and the caller told the victim to "leave well enough alone[,] let it be, don't come to court." The victim was wearing yellow prison garb because he was in protective custody. State v. Caraway, No. W2013-00438-CCA-R3CD, 2014 WL 2993862, at *8 (Tenn. Crim. App. June 30, 2014). Fifty-nine telephone calls placed by the defendant while incarcerated, some of which included the defendant expressing concern to a third party that the victim and another witness were "showing up," were admitted into evidence. Id. at *9.

the court acknowledged the difficulty the Petitioner experienced with the loss of his files; however, he admonished that the case had been "going on for too long … and [the Petitioner and second counsel were] going to have to do the best you can." The Petitioner interjected that "This ain't nothing that we just rushed through . . . this procedure takes time." The court then received assurances from second counsel that the petition would be ready to proceed to an evidentiary hearing on May 5, 2017. Without objection from the State, on May 5, 2017, the matter was again continued for a hearing based on second counsel's assertion of an issue the Petitioner sought to add to the amended petition. On August 22, 2017, second counsel filed an amended petition for post-conviction relief, incorporating the issues in the Petitioner's pro se petition and adding several other issues.

At the next setting, on August 25, 2017, second counsel advised the court at the top of the hearing that the Petitioner was not ready to proceed to a hearing because he was seeking to bring additional witnesses in to testify. Upon inquiry by the court, second counsel advised that the witnesses included "Canseler," the same person who testified at trial as seeing the Petitioner driving the victim's truck at the time of the offense, and the victim, Terrance McDonald. However, the Petitioner did not disclose why he wanted second counsel to interview or subpoena either witness. Regardless of second counsel's belief that the Petitioner was going to be "a problem," second counsel advised the court that he was ready to proceed with the evidentiary hearing. Second counsel then explained that the Petitioner refused to sign the amended petition because they were unable to come to an agreement on it. After noting that the Petitioner had also given the Sheriff "some trouble this morning," the State launched into an oral motion to dismiss the petition asserting as grounds the Petitioner's failure to sign or notarize the petition, second counsel's failure to consult with the Petitioner upon filing the amended petition, the failure to have witnesses present for the hearing, and that the issues in the petition had been previously determined on direct appeal. In the alternative, the State objected to any further continuances in the matter and urged the court to proceed with the evidentiary hearing. Following an extensive exchange between the court and the Petitioner, the Petitioner assured the court that he had "no problem" with second counsel and lamented that he did not want to "just rush through" his petition. The Petitioner eventually disclosed to the court that "if [he] could be relieved from [Judge Beasley's] courtroom, because I know that you are not going to make a ruling that you made in my trial, on your own mistake that you made, so I'm asking the Court to change the venue . . . because I don't feel like I am going to get a fair and impartial hearing in your courtroom." After even more discussion directly with the Petitioner, the court recused itself based generally on having to review its own trial determinations and transferred the Petitioner's case to another judge.[4] An order to that effect was issued the same day.

---

[4] Although not raised herein, this court has long held that a conflict does not arise based solely upon the trial court simultaneously serving as the post-conviction court. Harris v. State, 947 S.W.2d 156

- 4 -

**Second Post-Conviction Court.** On November 8, 2017, second counsel successfully moved to withdraw from representing the Petitioner based upon new employment. The record reflects the next court settings as December 15, 2017 and January 31, 2018, before the Honorable Judge Lee V. Coffee, for the purpose of appointing new counsel for the Petitioner. Third counsel was appointed to represent the Petitioner on February 1, 2018, and on April 19, 2018, third counsel requested and received a continuance without objection from the State. In requesting and receiving another continuance, on July 5, 2018, third counsel advised the court that the Petitioner had "problems with his petition," that the Petitioner had not communicated to third counsel what those "problems" were, and that the Petitioner was "still working on it." On August 7, 2018, third counsel requested and received yet another continuance without objection from the State.

At the next setting, on September 20, 2018, third counsel advised the court that he needed additional time to prepare based on his in-person discussions with the Petitioner. The court addressed the Petitioner, detailed the history of the case, and expressed concern over the age of the case noting, "whatever issues you think you might have had . . . if you have not developed those sufficiently by now, you will never develop them, sir." The court noted the case had been pending for "almost four years," beyond the statutory time frame allowed by law. See Tenn. Code Ann. § 40-39-109(a); Tenn. Sup. Ct. R. 28, § 8(B) (an "evidentiary hearing shall be conducted within four (4) months of the order scheduling the hearing"; this deadline may only be extended by order of the court upon finding that "unforeseeable circumstances render a continuance a manifest necessity" and shall not be extended more than sixty days past the original hearing date). The court then cautioned the Petitioner, if his post-conviction matter did not proceed forward at the next date, it would be deemed abandoned and dismissed. At the next setting, on December 14, 2018, at the request of third counsel and based on his assurance that all parties were ready to proceed, the matter was continued again.

On March 22, 2019, third counsel advised the court that the Petitioner was now having "some disagreements" with him and claiming, for the first time, that third counsel had an "conflict." Third counsel advised the court that the Petitioner wanted to address the court on the matter. Once again, the court summarized the extensive history of the Petitioner's case. Consistent with the prior admonition, the court warned that the case would be heard on that day or be dismissed. The Petitioner insisted that third counsel had a "conflict of interest," that the court was "trying to rush [him]," and that he was "not ready." At this point, the State renewed its oral motion to dismiss from August 2017 for

---

(Tenn. Crim. App. 1996) ("Judge who presided at trial in which conviction occurred is permitted, although not required, to preside over postconviction proceedings when competency of trial counsel has been challenged by defendant.").

failure to prosecute based on the Petitioner's behavior and continued delay of the matter. The court repeated its admonition of dismissal if the Petitioner did not proceed forward, and the Petitioner, in response, repeated his claims of unpreparedness and conflict. Finding that the Petitioner had engaged in purposeful delay and abandonment of the petition, the court granted the State's motion, and the matter was dismissed. A written order of dismissal including the court's extensive factual findings and conclusions of law was entered on May 28, 2019.

On March 26, 2021, the Petitioner filed a document entitled, "Petition for Common Law Writs of Certiorari and Supersedeas," alleging that the court acted illegally when it dismissed his petition for post-conviction relief. This court interpreted the document as a notice of appeal. Tennessee Rule of Appellate Procedure 4(a) states that "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from . . . ." However, this rule also states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). Under Rule 4, the notice of appeal was considerably late-filed. We were compelled however to inquire as to whether the Petitioner continued to be represented by third counsel at the time the post-conviction court dismissed the petition and for purposes of appeal. Tenn. R. Crim. P. 44(a) ("Every indigent defendant is entitled to have assigned counsel in all matters necessary to the defense and at every stage of the proceedings, unless the defendant waives counsel."). On April 23, 2021, this court issued an order directing third counsel to respond as to the status of his representation, and on May 21, 2021, third counsel filed an affidavit generally asserting that the Petitioner had been "uncooperative," that the Petitioner had "asked [third] counsel to cease representation," and that third counsel "was unable to advise client on any appellate issues[.]" After this court's inquiry, the record reflects that third counsel filed a motion to withdraw on May 13, 2021, because the Petitioner "had requested [third counsel] to voluntarily withdraw due to a conflict of interest," and had at the bottom of said motion, "NUNC PRO TUNC" to May 28, 2019. An order relieving third counsel from representing the Petitioner was entered by the post-conviction court on May 13, 2021, *nunc pro tunc* to March 25, 2019, a few days after the petition was dismissed.

Apparently, third counsel previously made an oral motion not borne out by the record, which was granted by the court but never reduced to an order. We caution that a *nunc pro tunc* order is based on some previous action by the court that is not adequately reflected in its record. Dewees v. Sweeney, 947 S.W.2d 861, 864 (Tenn. Ct. App. 1996). However, an order *nunc pro tunc* cannot be granted to relieve an attorney from the consequences of his own failure to comply with the rules. Id. (quoting Gillespie v. Martin, 172 Tenn. 28, 109 S.W.2d 93 (1937). More importantly, while the right to proceed pro se as a criminal defendant may be forfeited where a litigant repeatedly engages in

- 6 -

manipulation or abuse of the judicial process, see State v. Hester, 324 S.W.3d 1, 33 (Tenn. 2010), the court here neither appointed new counsel nor determined whether the Petitioner had waived or forfeited his right to counsel. See Leslie v. State, 36 S.W.3d 34, 39 (Tenn. 2000) (holding post-conviction court erred in allowing counsel to withdraw and failing to appoint new counsel); Tenn. Code Ann. § 40-14-205 ("The court may, upon good cause shown, permit an attorney appointed under this part to withdraw as counsel of record for the accused. If any attorney is permitted to withdraw, the court shall, in the manner contained in § 40-14-202, immediately appoint another attorney in the former attorney's place."). We reiterate that the court's dismissal of the petition for failure to prosecute did not relieve third counsel, who was appointed based on the Petitioner's indigency status, to properly withdraw from the case. Tenn. R. Crim. P. 37(e)(3) ("Pursuant to Tenn. Sup. Ct. Rule 13, § 1(e)(5), counsel appointed in the trial court to represent an indigent defendant shall continue to represent the defendant throughout the proceedings, including any appeals, until the case has been concluded or counsel has been allowed to withdraw by a court."). This is to avoid the risk of an indigent criminal defendant losing appellate review of the issue. We acknowledge "the Fourteenth Amendment's right to counsel, and therefore right to effective assistance of counsel, only applies through the first appeal as of right." Stokes v. State, 146 S.W.3d 56, 60 (Tenn. 2004) (citing Douglas v. California, 372 U.S. 353, 357, 83 S. Ct. 814, 9 L.Ed.2d 811 (1963)). However, in Tennessee, there is a statutory right to counsel that extends through the first level of appellate review. Id.; Tenn. Code Ann. § 40-30-107(b)(1); Lovin v. State, 286 S.W.3d 275, 284 (Tenn. 2009). Based on these unique circumstances, we waived the timely filing of the notice of appeal in the interest of justice and appointed appellate post-conviction counsel to represent the Petitioner on appeal. This case is now properly before this court for review.

## ANALYSIS

The sole issue presented for our review is whether the post-conviction court abused its discretion in dismissing the petition for post-conviction relief based on an abuse of judicial process for failure to prosecute. The Petitioner contends he was "simply trying to explain to the post-conviction court that [third] counsel had a conflict of interest and that [third] counsel was not diligently working on his case[.]" Based upon "the drawn-out history of the proceedings and the court's warnings to [the Petitioner]," the State contends dismissal of the petition was proper. We agree with the State.

In dismissing the petition for failure to prosecute, the court issued extensive oral and written findings of fact. In its oral ruling, the post-conviction court stated, in relevant part, as follows:

> Just for the record, amongst the ridiculous things [the Petitioner] said today, he indicates that somebody might as well be the lynch mob. I don't

know who he is putting in that lynch mob.  But [the Petitioner] has purposely delayed this matter, and it's one of those cases that, again, has been pending for four years on a petition for post-conviction relief.  [The Petitioner] has had three lawyers.  The State had made a motion in 2017, August 2017, asking [first post-conviction court] to dismiss this matter, because [the Petitioner] is never ready to have this case heard and refuses, actually, to have this case heard, and the motion probably should have been granted some two years ago.  But this Court, in fact, will find that [the Petitioner] has effectively abandoned his petition for post-conviction relief, and that he refuses to go forward, and his silly statement that it might take seven, or eight, or nine years is just absolutely, atrociously ridiculous.  And this Court, in fact, will order that this petition for post-conviction relief be dismissed because [the Petitioner] refuses to present or to go forward on that petition.

In the court's twenty-five-page written order dismissing the petition, it stated, in relevant part, as follows:

This Petitioner has refused to proceed with the evidentiary hearing on the petition for post-conviction relief.  The Courts scheduled this matter for evidentiary hearings on May 5, 2017, August 25, 2017, September 20, 2018, December 14, 2018, and March 22, 2019.  The Court heard and denied another oral motion for a continuance on March 22, 2019.  The Court admonished the defendant on September 20, 2018, that the Court would dismiss the petition if the petition were not heard on the next setting for an evidentiary hearing (see transcript page 7).  On December 14, 2018, the Court informed counsel that the case would be heard on the next scheduled hearing date of March 22, 2019.

After post-conviction counsel informed the Court that the Petitioner wanted yet another continuance, the Court informed the petitioner that the post-conviction had been pending in the courts, "four times longer than it took to get your case tried" [page 7 of the transcript].  Whereupon, incredibly, the Petitioner responded that **"this is my freedom, so it might take five, six, seven years"** (page 8 of the transcript).  As the Court continued to admonish the Petitioner that the hearing would be conducted or the petition would in fact be dismissed, the Petitioner insisted that he was being rushed.  Thereupon, the State of Tennessee informed the Court that the State had requested that [first post-conviction court] dismiss the petition in August 2017, "for failure to move forward on this case".  The Petitioner had allegedly engaged in misconduct and had made threats against deputies (page 10 of the transcript).  The State of Tennessee again renewed the motion to

dismiss because of the Petitioner's continued refusal to proceed with the evidentiary hearing.

Thereupon, the Court again instructed the Petitioner—multiple times—that the matter would be heard on March 22, 2019, or that it would indeed be dismissed. The Petitioner insisted that he was "not prepared" and that he wanted a fourth post-conviction attorney. The Petitioner continued to insist, "I am not ready. We have not prepared to go forward" (page 12 of the transcript). The Petitioner demanded a continuance and the Court denied the request. The Petitioner continued to interrupt the Court and steadfastly insisted that he needed yet another continuance. After the Petitioner repeatedly interrupted the Court, the Court asked the Petitioner to return to the holding cell. As a parting insult, the Petitioner accused the court of, "Man, you might as well be a lynch mob, man". Thereupon, the Court had the Petitioner removed from the Courtroom pursuant to Rule 43 of the Tennessee Rules of Criminal Procedure (see-attached transcript).

. . . .

Per the Tennessee Post-Conviction Procedure Act 32:18 regarding Evidentiary Hearings, if the petition is not dismissed during the preliminary process, a hearing must be held within four months of the entry of the order of the trial court, although continuances may be granted if necessary. The petitioner shall appear at the hearing, unless incarcerated out of state, in which case affidavits may be presented. The petitioner shall testify if there are substantial questions of fact at issue. The hearing must be recorded. Tenn. Sup. Ct. R. 28, § 8(B); T.C.A. § 40-30-109(a). The hearing is not to be continued except by order of the court finding unforeseeable circumstances which render a continuance a manifest necessity. Any continuance cannot be more than 60 days beyond the original hearing date. But see Hill v. State, 2005 WL 2276422 (Tenn. Crim. App. 2005) (non-compliance with time limits does not entitle petitioner to any relief). But see [Torrian] Dillard v. State, 2011 WL 744740 (Tenn. Crim. App. 2011) (petition may be dismissed for failure to prosecute where defendant is given repeated opportunities for an evidentiary hearing and fair warning that failure to proceed will result in dismissal).

. . . .

This Petitioner has abused the judicial process, thereby justifying the dismissal of the petition—with prejudice—for failure to prosecute. After

- 9 -

repeated opportunities for an evidentiary hearing and multiple fair warning from the Court that Petitioner would be required to proceed on March 22, 2019, the Petitioner refused to go forward with his proof on the evidentiary hearing date. Ultimately, the Petitioner refused to proceed and demanded that the Court grant yet another continuance. Post-conviction relief is a statutory remedy offered by the legislature; it is not a constitutional right. Those who abuse the process cannot be heard to complain when access to the remedy is denied that petitioner caused the delays in prosecution. The petitioner caused the multiple continuances and delays that occurred in the case, as he continued to insist that he needed more time and was not ready and unprepared. Despite repeated warnings from the Court, the Petitioner refused to present his petition. This Petitioner, who had engaged in an abusive process for over four (4) years, insisted that he needed another five (5), six (6), seven (7) years to be ready to present his petition. The State of Tennessee had requested dismissal of the petition two (2) years ago because of the Petitioners willful failure and abandonment of this petition. On March 22, 2019, the Court had no other options except to dismiss the petition for post-conviction relief as the Petitioner has refused to prosecute his petition and had interfered with the administration of justice by the petitioner's willful and purposeful refusal to proceed with the case. (emphasis in original).

We must begin by addressing the Petitioner's complaint that third counsel had a "conflict of interest" and that third counsel was not diligently working on his case. As previously stated herein, there is no constitutional entitlement to the effective assistance of counsel in a post-conviction proceeding. Frazier v. State, 303 S.W.3d 674, 682 (Tenn. 2010) (reversing forfeiture of counsel because counsel "can hardly be expected to objectively evaluate his or her performance," and court should have either disqualified counsel or obtained a valid waiver of the conflict). Rather, the statute authorizing the appointment of counsel in a post-conviction proceeding implicitly includes the right to conflict-free counsel. Id. at 685; McCullough v. State, 144 S.W.3d 382, 385 (Tenn. Crim. App. 2003) (seeking to represent defendant in post-conviction proceeding after representing defendant on direct appeal created an actual conflict of interest); Kevin Burns v. State, No. W2000-02871-CC-R9-PD, 2001 WL 912817, at *4 (Tenn. Crim. App., Aug. 9, 2001). In determining whether to disqualify an attorney in a criminal case, the trial court must first determine whether the party questioning the propriety of the representation met its burden of showing that there is an actual conflict of interest. State v. White, 114 S.W.3d 469, 476 (Tenn. 2003) (citing Clinard, 46 S.W.3d at 187; Culbreath, 30 S.W.3d at 312-13; Jones, 726 S.W.2d at 520-21); Leslie, 36 S.W.3d at 39 (noting "when a defendant seeks to substitute appointed counsel, he has the burden of establishing to the satisfaction of the trial judge good and valid reasons for the dismissal of his attorney"); see also United States

v. Iles, 906 F.2d 1122, 1130 (6th Cir.1990) (stating, "It is hornbook law that when an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged ..., the trial court clearly has a responsibility to determine the reasons for [the] dissatisfaction.") (internal quotation omitted).

When a conflict of interest is apparent, the trial court has the duty to conduct an independent inquiry prior to the evidentiary hearing. Frazier, 303 S.W.3d at 685. Otherwise, prejudice will be presumed. Id.; see also Strickland, 466 U.S. at 692 (quoting Cuyler v. Sullivan, 446 U.S. 335, 348, 350 (1980)) (prejudice will be presumed in cases where the petitioner has established that trial counsel "'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance'"); United States v. Taylor, 487 U.S. 326, 336-337, 108 S. Ct. 2413, 101 L.Ed.2d 297 (1988) (on-the-record inquiry into the defendant's allegations "permit[s] meaningful appellate review" of a trial court's exercise of discretion). Our Rules of Professional Conduct dictate that "[a] lawyer shall not represent a client if ... there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Tenn. Sup. Ct. R. 8, Rule 1.7. "[A]n actual conflict of interest includes any circumstances in which an attorney cannot exercise his or her independent professional judgment free of 'compromising interests and loyalties." State v. White, 114 S.W.3d 469, 476 (Tenn. 2003) (quoting State v. Culbreath, 30 S.W.3d 309, 312-13 (Tenn. 2000)). The proper focus is solely upon whether counsel's conflict affected counsel's action[.]" Netters v. State, 957 S.W. 844, 848 (Tenn. Crim. App. 1997).

The record reflects that third counsel was appointed to represent the Petitioner on February 1, 2018. Some seven months later, on September 20, 2018, the court admonished the Petitioner that if the Petitioner did not proceed to an evidentiary hearing at the next court setting, the petition would be dismissed. After five more court re-settings with third counsel, the Petitioner claimed a "conflict of interest" existed with third counsel on March 22, 2019. Third counsel did not file a motion to withdraw based on a "conflict of interest" nor did he orally advise the court that such "conflict" existed. The purported *nunc pro tunc* motion to withdraw generally asserted that the Petitioner had been "uncooperative," and that the Petitioner had "asked [third] counsel to cease representation," neither of which constitute sufficient grounds for withdrawal. Third counsel advised the court at the top of the hearing that the Petitioner was now having "some disagreements" with him and claiming, for the first time, that there was a "conflict." The court with all due patience again engaged the Petitioner in an extensive colloquy and advised the Petitioner if he did not proceed with an evidentiary hearing, the matter would be dismissed that day. The Petitioner, loquacious and voluble, replied, as he had over the course of the proceeding, that he did not wish to be rushed. Throughout this exchange, the Petitioner did not advise the court of the nature of the alleged conflict, and the court did not inquire. While the

Petitioner's conclusory claim of a "conflict of interest" with third counsel on day of hearing certainly could have been viewed as a delay tactic, third counsel's comments regarding the deterioration of their relationship were enough to trigger the court's duty to inquire. Accordingly, the court's failure to make <u>any</u> inquiry into the Petitioner's alleged claim of a conflict of interest constitutes a <u>Frazier</u> error. For the following reasons, we conclude that the error in failing to engage in the required inquiry was harmless because it would not have changed the outcome of this case. <u>Martel v. Clair</u>, 565 U.S. 648, 666, 132 S. Ct. 1276, 1289, 182 L. Ed. 2d 135 (2012) (second tier court acted within its discretion in denying petitioner's request to substitute counsel, even without the appropriate inquiry, because appointing new lawyer would have allowed petitioner to file a futile motion).

As to the Petitioner's challenge to dismissal based on an abuse of judicial process, a trial court has inherent authority to dismiss a petition for post-conviction relief with prejudice based on a petitioner's failure to prosecute. <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 630-33, 82 S. Ct. 1386, 1388-90, 8 L. Ed. 2d 734 (1962) (noting that the inherent power of the court to do so is "of ancient origin, having its roots in judgments of nonsuit and non prosequitur" and necessary to prevent undue delays in the disposition of pending cases and to avoid congestion in court calendars); <u>Fred Hodges v. Att'y Gen.</u>, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000) ("Trial courts possess inherent, common-law authority to control their dockets and the proceedings in their courts. Their authority is quite broad…"); Tenn. R. Civ. P. 41.02 (authorizing the court to dismiss plaintiff's claim if he fails to prosecute the claim, to comply with the Rules of Civil Procedure, or to comply with any order of the court). In addition, "[t]rial courts may, on their own motion, dismiss cases for lack of prosecution, but this authority should be exercised sparingly and with great care." <u>Fred Hodges v. Att'y Gen.</u>, 43 S.W.3d at 921 (citing <u>Harris v. Baptist Mem'l Hosp.</u>, 574 S.W.2d 730, 731 (Tenn.1978)).[5] Because decisions to dismiss for failure to prosecute are discretionary, reviewing courts will second-guess a trial court only when it has acted unreasonably, arbitrarily, or unconscionably. <u>Id.</u> at 921 (internal citations omitted).

Upon determination by the post-conviction court that a litigant is abusing the post-conviction process by filing successive petitions, seeking repeated withdrawals, or is otherwise acting in bad faith, dismissal of the action for failure to prosecute, with prejudice, is proper. <u>Cazes v. State</u>, 980 S.W.2d 364, 365 (Tenn. 1998) (citing <u>Williams v. State</u>, 831 S.W.2d 281, 283 (Tenn. 1992)). "[W]hile trial courts have authority under Tenn. Code Ann. § 40-30-115(a) to permit withdrawal [of the petition] without penalty, that statute does not require courts to suffer interminable bad faith conduct." <u>Id.</u> On appeal, the

_____

[5] For purposes of this analysis, "a post-conviction proceeding is a hybrid affair, involving an appeal from a criminal prosecution which is considered under *civil rules of procedure.*" <u>Watkins v. State</u>, 903 S.W.2d 302, 305 (Tenn. 1995).

- 12 -

appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. Fields v. State, 40 S.W.3d 450, 453 (Tenn. 2001). "When a petitioner seeks and obtains the aid of counsel through court appointment, the petitioner needs to understand that the right to make the large majority of the decisions relating to the conduct of the case then rests with the attorney. The attorney 'is in no way obligated to comply with a petitioner's demands to investigate or pursue unreasonable or frivolous claims.'" Leslie, 36 S.W.3d at 38. Hence, a petitioner who abuses the post-conviction process may be denied a remedy. Id. at 39 (citing Cazes v. State, 980 S.W.2d 364, 365 (Tenn. 1998)). A post-conviction court's order dismissing a petition for post-conviction relief without a hearing shall set forth the post-conviction court's findings of fact. Reginald McWilliams v. State, No. W2019-00935-CCA-R3-PC, 2020 WL 3410239, at *1 (Tenn. Crim. App. June 19, 2020); Charles Ritter v. State, No. E2003-03016-CCA-R3-PC, 2004 WL 2309140, at *1 (Tenn. Crim. App. Oct. 14, 2004); Almeer Nance v. State, No. E2005-02265-CCA-R3-PC, 2006 WL 1575110, at *1 (Tenn. Crim. App. June 9, 2006).

The record shows the Petitioner filed his post-conviction petition in January 2015, and it was dismissed without a hearing four years later in March 2019. During this time, the Petitioner was appointed three different attorneys to represent him. First counsel, after representing the Petitioner for nearly a year, was permitted to withdraw based on a break-down in communication and threats to her safety. At the first court's inquiry into her motion, first counsel explained that the Petitioner was raising "everything" in his petition, and she reminded the first court that at trial the victim and his grandmother had been threatened not to show up. Second counsel, after representing the Petitioner for nearly two years, withdrew from representation based on a change in employment. During second counsel's representation, the first court eventually admonished the Petitioner that the case had been going on too long, and he had to proceed. The State also orally moved to dismiss. Shortly thereafter, the Petitioner claimed a "conflict of interest" with the first court, and the first court agreed and recused itself after presiding over the matter for over two years.

The second court also granted the Petitioner multiple continuances and presided over the matter for nearly two years. At his second request for continuance, third counsel advised the court that the Petitioner had "problems with his petition," that the Petitioner had not communicated to third counsel what those "problems" were, and that the Petitioner was "still working on it." Faced with a fourth request for a continuance, the second court admonished the Petitioner that if the petition did not proceed forward to an evidentiary hearing on the next setting, it would be dismissed. At the sixth court setting, on March 22, 2019, third counsel asserted generally that the Petitioner had "some disagreements" with him and that the Petitioner claimed third counsel had a "conflict." After a full colloquy

with the Petitioner, the second court granted the State's renewed motion to dismiss for failure to prosecute. The record fully supports the second court's determination that the Petitioner had abused the judicial process by engaging in purposeful delay and failure to prosecute. The record evinces similarities in the difficulties expressed by each of the three court-appointed counsel to represent the Petitioner. Each counsel's attempt to proceed forward with a hearing was frustrated by the Petitioner's repeated refrain of adding unspecified issues or witnesses. We additional note that the Petitioner refused to sign the amended petition because he disagreed with it. A clear pattern also emerged showing that after each court admonished the Petitioner that the petition would be dismissed if he did not proceed forward, the Petitioner would then claim an unsubstantiated "conflict of interest." The Petitioner appeared to be laboring under two misconceptions: (1) that he was entitled to counsel of his choice, and (2) that the time within which to litigate his claims was without limit. Given the Petitioner's pattern of behavior, even if the second court had provided the Petitioner with a fourth attorney, there is nothing on this record to convince us that the Petitioner would have adhered to the second court's admonishments to proceed with an evidentiary hearing. The gravity of a dismissal of a petition for post-conviction relief for failure to prosecute is not lost on this court; however, "[n]o one, rich or poor, is entitled to abuse the judicial process." Green v. Carlson, 649 F.2d 285, 287 (5th Cir. 1981) (internal citations omitted). "Flagrant abuse of the judicial process can enable one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." Id. Because the second court did not act unreasonably, arbitrarily, or unconscionably in dismissing the petition for post-conviction relief based on an abuse of judicial process for failure to prosecute, we conclude the Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the dismissal of the petition for post-conviction relief.

_____
CAMILLE R. MCMULLEN, JUDGE